United States Court of Appeals,

Fifth Circuit.

No. 96-10951.

LEAGUE OF UNITED LATIN AMERICAN CITIZENS # 4552 (LULAC), Plaintiff-Appellant,

v.

ROSCOE INDEPENDENT SCHOOL DISTRICT;  Larry Williams;  Larry Willman;  Daylon Althof;  Freddy Freeman;  James R. Watts, Sr.;  Randy Whorton;  Jose Villafranca, Defendants-Appellees.

Aug. 27, 1997.

Appeal from the United States District Court for the Northern District of Texas.

Before SMITH, BARKSDALE and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

The League of United Latin American Citizens # 4552 ("LULAC") contends that the district court erred in calculating the amount of attorneys' fees and costs awarded in this Voting Rights Act case. LULAC complains that the district court (1) erroneously reduced the number of hours reasonably expended;  (2) assigned an hourly rate upon which fees were calculated that is not supported by the record;  (3) erroneously failed to make a separate award for time spent by paralegals and law clerks;  and (4) erroneously refused to award any fees for hours spent by attorney José Garza.  We vacate and remand.

I.

LULAC requested the attorneys' fees at issue in this appeal in connection with a Section 5 enforcement action under the Voting Rights Act, 42 U.S.C. § 1973c.  During the course of a Section 2

1

suit challenging Roscoe Independent School District's ("Roscoe ISD" or "the District") at-large election system, LULAC discovered that the District had failed to obtain preclearance of certain election changes as required by Section 5 of the VRA. LULAC sought and obtained an injunction against an upcoming election and an order requiring Roscoe ISD to obtain Section 5 preclearance for election changes.

As prevailing party, LULAC sought attorneys' fees of $43,650.00 and costs of $15,325.75. Instead, the district court awarded LULAC attorneys' fees of $3,750.00 and costs of $1,501.25. The dramatic disparity between the attorneys' fees and costs claimed and those awarded resulted from several decisions made by the district court.

The largest single reduction in hours resulted from the district court's refusal to award LULAC any attorneys' fees for the 77.2 hours claimed by attorney José Garza because the court concluded that Garza had waived his right to seek an award of his fees. *See* Part II.D, below. Even when Garza's hours are excluded from consideration, however, the district court still credited LULAC's attorneys with less than one-third of the hours claimed. The district court concluded that out of the 97.4 hours that the other two LULAC attorneys claimed to have spent on the underlying litigation, only 30 hours were reasonable.[1] The district court also halved the hourly rate requested by LULAC for attorney time

_____

[1]Rolando Rios claimed 52 hours; and Judith A. Sanders-Castro claimed 45.4 hours. Rios received credit for 20 hours, while Sanders-Castro received credit for only 10 hours.

and declined to make a separate award for time spent by law clerks and paralegals.

## II.

Section 1973*l*(e) of the Voting Rights Act and Section 1988 of the Civil Rights Attorneys' Fees Award Act afford a district court the discretion to award reasonable attorneys' fees to prevailing parties. *See* 42 U.S.C. §§ 1973*l*(e) & 1988. The method by which the district court calculates an attorneys' fees award is well established. The district court first calculates the "lodestar." *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir.1993). The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939-40, 76 L.Ed.2d 40 (1983), *cited in Watkins,* 7 F.3d at 457. When calculating the number of hours reasonably expended on the case and assigning a reasonable hourly rate for an attorney's services, the district court must consider the factors articulated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir.1974).[2] *See, e.g., Watkins,* 7 F.3d at 457.

---

[2]The *Johnson* factors are as follows: (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* The district court explained at the outset of its opinion that it had taken the relevant *Johnson* factors into account where appropriate. *See Blanchard v. Bergeron,* 893 F.2d 87,

The lodestar is presumed to reflect a reasonable attorneys' fee award, but the district court may adjust it upward or downward in exceptional cases. *Id.* (citing *City of Burlington v. Dague,* 505 U.S. 557, 561-63, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992)); *see also Walker v. United States Dep't of Hous. and Urban Dev.,* 99 F.3d 761, 771-73 (5th Cir.1996) (describing the limited circumstances in which an adjustment to the lodestar is appropriate).

This court reviews the district court's award of attorneys' fees for an abuse of discretion. *Watkins,* 7 F.3d at 457. Subsidiary factual findings are reviewed for clear error. *Id.* "[T]he district court has broad discretion in setting the appropriate award of attorneys' fees." *Id.* (citing *Hensley,* 461 U.S. at 436-37, 103 S.Ct. at 1941).

*A. Number of Hours Reasonably Expended*

The district court must first calculate the number of hours reasonably expended on the litigation. *Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 324 (5th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995). The calculation requires a determination of whether the total number of hours claimed were reasonable and whether specific hours claimed were reasonably expended. *Alberti v. Klevenhagen,* 896 F.2d 927, 933-34 (5th Cir.), *vacated in part on other grounds,* 903 F.2d 352 (5th Cir.1990). The district court must eliminate excessive or

91 (5th Cir.1990) (emphasizing that "attorneys' fee litigation should not require specific reasoning by the trial court to justify every facet of its decision").

4

duplicative time.  *Watkins,* 7 F.3d at 457.  We review the district court's findings regarding the number of hours reasonably expended for clear error.  *Alberti,* 896 F.2d at 934.

The district court in this case offered two bases for eliminating all but 30 of the attorney hours claimed.  First, the district court concluded that the attorneys' documentation of the hours spent was so inadequate that the court was unable to determine whether the time claimed was excessive or duplicative.  Second, the court justified this figure based on the simplicity of the case and the expertise of prevailing counsel in voting rights matters.[3]

The fee applicant has the burden of presenting adequate documentation of the hours reasonably expended. *Kellstrom,* 50 F.3d at 324.  If the applicant's documentation of the hours claimed is "vague or incomplete," the district court may reduce or eliminate those hours.  *Id.* (emphasis omitted); *Watkins,* 7 F.3d at 457.  As we explained in *Kellstrom,* "[l]itigants take their chances" by submitting fee applications that are too vague to permit the district court to determine whether the hours claimed were reasonably spent.  50 F.3d at 327.  On the other hand,

> ... we are mindful that practical considerations of the daily practice of law in this day and age preclude "writing a book" to describe in excruciating detail the professional services rendered for each hour or fraction of an hour.  We also

---

[3]*Johnson* recognizes the common sense proposition that easier and more routine cases take less time to prepare than do cases that present novel questions.  *See Johnson,* 488 F.2d at 717-18. Similarly, it is also reasonable to assume that a more experienced attorney will take less time to accomplish a routine task than will a novice.

>recognize that, in this era of computerized timekeeping, many data processing programs limit the amount of input for any given hourly or daily entry.

*Kellstrom,* 50 F.3d at 327.

Although we have consistently held that district courts enjoy broad discretion to exclude or reduce hours based on insufficient documentation, mere recitation that there is insufficient documentation cannot insulate the district court's award from appellate review. The hourly records submitted by LULAC attorneys in this case were not so vague or unilluminating that they precluded meaningful review of whether particular hours were reasonably expended on this litigation or whether the hours spent were excessive or duplicative. Each attorney submitted records containing the date, the number of hours spent (calculated to a tenth of an hour), and a short but thorough description of the services rendered.

To be sure, the attorneys' billing records contain particular entries that the district court was within its discretion to disallow based on vagueness. The entry cited by the district court as an example in its opinion, Sanders-Castro's entry of 6.9 hours for "research and review of cases," is just such an entry. The district court might also conclude that certain of the hours claimed were not reasonable because of the attorneys' expertise in this area, because of the simplicity of the case, or because the hours were duplicative. On remand, the district court should analyze whether particular hours were reasonably expended rather than making an across-the-board reduction based on inadequate

6

documentation.

Aside from the 6.9 hours of Sanders-Castro's time that the district court specifically disallowed, the only other time the district court specifically excluded was 2.5 hours that Rolando Rios devoted to amending LULAC's complaint. This amendment was necessary because the district court determined that LULAC's original complaint contained a jurisdictional defect and ordered its correction. In refusing to award attorneys' fees for this time, the district court explained that the amendment was required for the complaint "to comply with the basic rules of pleading jurisdictional allegations" and that "[a] reasonable attorney would have drafted the complaint correctly the first time." *See, e.g., Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939-40. Although LULAC contends that there was no jurisdictional defect in its original complaint and that it was more efficient to amend the complaint than to challenge the district court's order, disallowing these hours was within the district court's purview.[4]

B. *Reasonable Hourly Billing Rate*

After determining the hours reasonably expended on the litigation, the district court must set a reasonable hourly rate. *Watkins,* 7 F.3d at 458. The reasonable hourly rate is based on the "prevailing market rates in the relevant community." *Blum v.*

---

[4]This matter is particularly illustrative of why the district court has broad discretion in determining the number of claimed hours that were excessive or duplicative. It would be unduly inefficient for this court to assess the merits of the jurisdictional dispute to determine whether the appellants are entitled to 2.5 hours of attorneys' fees.

*Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). When the attorney's customary hourly rate is within the range of hourly fees in the prevailing market, that rate should be considered in setting a reasonable hourly rate. *See Islamic Ctr. of Miss., Inc. v. City of Starkville, Miss.,* 876 F.2d 465, 469 (5th Cir.1989). We review the district court's finding of a reasonable hourly rate for clear error. *Id.* at 468.

The hourly fee awarded must be supported by the record; the district court may not simply rely on its own experience in the relevant legal market to set a reasonable hourly billing rate. *See Cobb v. Miller,* 818 F.2d 1227, 1232 & n. 7 (5th Cir.1987) (noting that a magistrate judge should not have considered his personal experience in setting a reasonable hourly rate); *cf. Powell v. Commissioner of Internal Revenue,* 891 F.2d 1167, 1173 (5th Cir.1990) (reversing an hourly rate set by the tax court because the court "did not explain any evidentiary basis for its determination that the hourly rate should be limited ...").

The district court found that "$125.00 per hour is a reasonable price for good litigators with the experience similar to that of the plaintiffs' attorneys." No evidence in the record, however, supports a reasonable hourly rate of less than $150 per hour. LULAC presented affidavits that the prevailing market rate for lawyers of the skill, experience, and reputation of its attorneys was in the range of $250 per hour.[5]  Roscoe ISD

---

[5]LULAC relied on the affidavits of its attorneys, as well as the affidavit of William Garret, a practitioner from Dallas, who provided testimony regarding the prevailing market rate in the

criticizes LULAC's evidence, claiming that it does not demonstrate the reasonable hourly rate in the relevant market. But even evidence presented by Roscoe ISD showed that $150 per hour was a reasonable hourly rate.[6]

Aside from the absence of any evidentiary basis for the selection of $125.00 as a reasonable hourly rate, other factors also militate in favor of a higher hourly rate. First, the district court expressly relied on prevailing counsels' expertise in determining the number of hours reasonably expended. Although it is reasonable to assume that a more experienced attorney will take less time to accomplish a routine task than will a novice, the reduction in hours on this basis should be counterbalanced by a higher hourly fee. *See Johnson,* 488 F.2d at 717-18.

Second, the district court declined to make a separate award to LULAC of its law clerks' and paralegals' time because the court found that "the fees of support personnel are generally reflected

---

Northern District of Texas. LULAC also points out that the same district court awarded Rios $200 per hour as a reasonable hourly rate in an unrelated lawsuit.

[6]Counsel for Roscoe ISD, Charles E. Jones, Jr., submitted an affidavit in which he stated that $150 per hour was a reasonable hourly rate. In its brief on appeal, Roscoe ISD relies on another affidavit, that of Charles C. Self, III, which the District claims establishes that a reasonable hourly rate "was between $57.47 per hour and $86.21 per hour based upon the number of hours claimed by Appellants in this case." Self's affidavit merely expressed his opinion that a total attorneys' fee award of $10,000 to $15,000 would be reasonable. Roscoe ISD apparently works backward from this total, dividing it by the number of hours claimed by appellants to obtain the $57-86 rates. Roscoe ISD's reliance on Self's affidavit is misplaced. Simply put, Self's affidavit says nothing about the reasonable hourly rate and cannot be relied on as evidence to support an award of $125 per hour.

9

in attorney fees" in the Abilene/Roscoe area. Although the district court properly refused to make a separate award for those fees, as discussed in the following section, that fact should have been reflected by a higher hourly fee. We will remand to allow the district court an opportunity to reconsider its award, including its reasonable hourly rate finding.

*C. Paralegal and law clerk fees*

The district court declined to make a separate hourly fee award for the work of LULAC's law clerks and paralegals because the court found that "the fees of support personnel are generally reflected in attorney fees" in the Abilene/Roscoe area. Such fees may be awarded at market value if the prevailing practice in the relevant community is to bill these services directly to clients. *Missouri v. Jenkins,* 491 U.S. 274, 286-88, 109 S.Ct. 2463, 2470-72, 105 L.Ed.2d 229 (1989). The prevailing practice is a factual matter reviewed for clear error.

LULAC submitted the affidavit of William Garret, in which he stated that a reasonable billing rate for paralegal and law clerk services is between $75 and $125 per hour. That this is a reasonable billing rate range does not necessarily mean, however, that the prevailing practice is to bill this time separately. LULAC had the burden of showing that its billing comported with the prevailing practice in the relevant market. In the absence of testimony regarding the prevailing practice, the district court's finding was not clearly erroneous.

Nonetheless, because separate hourly fees were not awarded for

10

the time spent by paralegals and law clerks, the hourly rate for attorneys should have been in excess of that awarded by the district court in this case. As the Supreme Court explained in *Missouri v. Jenkins:*

> All else being equal, the hourly fee charged by an attorney whose rates include paralegal work in her hourly fee, or who bills separately for the work of paralegals at cost, will be higher than the hourly fee charged by an attorney competing in the same market who bills separately for the work of paralegals at "market rates." In other words, the prevailing "market rate" for attorney time is not independent of the manner in which paralegal time is accounted for.

491 U.S. at 286-87, 109 S.Ct. at 2470-71. On remand, the district court should take paralegal and law clerk costs into account when finding the reasonable hourly rate for attorney time.

*D. Waiver of attorneys' fees*

The district court held that LULAC attorney José Garza waived $19,300 in attorneys' fees as a result of certain statements he made at a hearing before a three-judge panel on May 3, 1996. At the hearing, Charles Jones, counsel for Roscoe ISD, allegedly characterized LULAC's Section 5 claim as "economic terrorism." Although Garza initially ignored these allegations, a member of the panel asked him to respond. During the ensuing discussion, Garza offered to forgo filing an application for his fees, if Jones returned any payments that he and his co-counsel had received from the District. At oral argument before this court, Jones conceded that he has not returned any attorneys' fees to the District.

On May 16, 1996, Garza, Rios, and Sanders-Castro filed an application for attorneys' fees on LULAC's behalf. On May 18, 1996, the district court entered an order requiring Jones to

11

"advise this Court whether he will waive his fees in this section 5 case." Two days later, Jones filed a response indicating that he would agree to waive his fees. On May 24, 1996, however, the district court ruled that no waiver had occurred and allowed the District an additional three weeks to respond to LULAC's motion for attorneys' fees. Roscoe ISD offered no additional facts on the issue, nor did it dispute Garza's characterization of the hearing.

The district court found in its final order that Garza had waived his attorneys' fees. Although the court acknowledged that a dispute existed regarding whether Garza's offer was open-ended, the court noted that Garza submitted an affidavit in which he stated that if the district court interpreted his offer as an "open-ended" one, he would "abide by such interpretation." Specifically, Garza stated in his affidavit:

> Although Defendants did not accept my offer prior to my filing of a fee application, if [the district court's] interpretation of my statements was that I made an open-ended offer, I will abide by such interpretation.

The district court concluded that Garza's offer was open-ended and that Garza had, therefore, waived his right to attorneys' fees.

A waiver of attorneys' fees in civil rights actions is not precluded by statute. *See Evans v. Jeff D.,* 475 U.S. 717, 727, 730-31, 106 S.Ct. 1531, 1537, 1538-40, 89 L.Ed.2d 747 (1986). Although the case law is not well developed on this type of waiver, we conclude that whether a waiver of fees has occurred is governed by basic principles of contract formation. *See id.; see also Gram v. Bank of Louisiana,* 691 F.2d 728, 730 (5th Cir.1982) ("[A] plaintiff may waive his right to attorney's fees in a negotiated

12

settlement agreement").

The only evidence as to the content of Garza's offer is contained in his affidavit, in which he states that he offered to forgo filing an application for attorneys' fees if the District's counsel returned the fees he and his co-counsel had received from the District.  Garza filed a fee application before Jones agreed to return his attorneys' fees.  In doing so, Garza revoked his offer.  Nevertheless, Garza thereafter agreed to abide by the district court's decision if it determined that the original offer was "open-ended."  The district court relied on Garza's statement and held that his offer to forgo a fee application was open-ended.[7]

Fortunately, we need not decide whether Garza is bound to abide the district court's ruling because his offer, even if open-ended, was never accepted by Jones.  Garza offered to forgo filing a fee application if Jones and co-counsel returned fees that they had received.  As Jones conceded at oral argument he has not yet returned the fees paid him.  Thus, Jones never accepted the offer.[8]

Because no binding agreement required Garza to forgo his fees,

---

[7]The record contains no evidence to support the district court's conclusion that Garza's offer was "open-ended," by which the parties appear to mean that Garza made a "firm offer."  A firm offer generally must be supported by consideration.  E. ALLAN FARNSWORTH, CONTRACTS § 3.23 (2d ed.1990).

[8]The District asserted in its first amended response to LULAC's request for attorneys' fees that Jones agreed to waive his fees before Garza withdrew his offer.  No evidence supports this assertion.  More important, however, under the peculiar circumstances of this case, a promise to waive fees would not constitute acceptance of the offer made by Garza.

we remand for the calculation of a reasonable attorneys' fee for Garza's services.

*E. Attorneys' Fees on Appeal*

LULAC also requests reasonable attorneys' fees for the time devoted to this appeal. We hold that LULAC, as prevailing party on appeal, is entitled to an award of reasonable attorneys' fees. *See Bode v. United States,* 919 F.2d 1044, 1052 (5th Cir.1990). Because we vacate and remand the attorneys' fee award made in the district court, we also leave to the district court on remand the award of LULAC's attorneys' fees for this appeal. *See, e.g., Fontenot v. Louisiana Bd. of Elementary and Secondary Educ.,* 835 F.2d 117, 121 (5th Cir.1988); *Marston v. Red River Levee & Drainage Dist.,* 632 F.2d 466, 468 (5th Cir.1980).

## III.

Accordingly, we VACATE the award of attorneys' fees and REMAND for further proceedings consistent with this opinion.