JAMES C. HO, Circuit Judge, concurring:
Attorneys are fiduciaries. As such, they must expend client resources prudently-to serve the best interests of the client, not the attorney.
This principle applies with special force when an attorney fee is paid, not by a consenting client, but by an opposing party, pursuant to a fee-shifting statute. As we have long observed, Congress enacts fee-shifting statutes "not ... for the benefit of attorneys but to enable litigants to obtain competent counsel." Johnson v. Ga. Highway Exp., Inc. , 488 F.2d 714, 719 (5th Cir. 1974).
It is thus well established that an attorney fee must be "reasonable," whether it is paid by a client or an opposing party.[1]
To state the obvious, it is not reasonable for an attorney to charge for time spent on tasks that lack any reasonable prospect of creating value for the client. After all, to charge for that time would benefit only the attorney, not the client. Yet the practice is sufficiently widespread that a term has been coined for it: churning.[2]
To be sure, not every attorney task will ultimately pay off for the client, even amongst the most conscientious of counsel. A legal theory might seem genuinely promising at the outset, but ultimately bear no fruit. Attorney time may be reasonably spent, even if it does not actually result in client value.
That is why we have said that we do not reduce attorney fees "solely on the basis of the amount of damages obtained." Black v. SettlePou, P.C. , 732 F.3d 492, 503 (5th Cir. 2013) (emphasis added). But that does not alter the fact that "[t]he most critical factor in determining an attorney's fee award is the 'degree of success obtained.' " Saizan v. Delta Concrete Prod. Co. , 448 F.3d 795, 799 (5th Cir. 2006) (quotations omitted) (quoting Singer v. City of Waco, Tex. , 324 F.3d 813, 829 (5th Cir. 2003) ).
These principles are not in conflict. Here's how to reconcile them: Attorney time must be spent in service of the best interests of the client. So where attorney time exceeds client value to a significant degree, courts should be suspicious. The overarching question that courts should ask in such circumstances is whether the *263 attorney expended the time in a good faith pursuit of value for the client-or was instead engaged in churning attorney fees. If the former, the time may be awarded, even though it ultimately proved fruitless. If the latter, the churned time should be denied.
The opinion of the court champions these values, and I am delighted to join it. I write separately simply to point out that, consistent with Johnson , the district court could have (and perhaps should have) gone further. If an attorney cannot explain how time was spent in the good faith pursuit of client value, then a district court would be right not only to reduce the fee devoted to a wasted task, but to eliminate the fee altogether. For example, if the attorney in this case cannot offer a reasonable explanation as to how the time spent after rejecting the settlement offer was expended in a good faith pursuit for a higher judgment, the district court would have been well within its discretion to reduce post-offer fees to zero. And the same principle would of course apply to a case of attorney waste where no settlement offer was ever made. I concur.

See , e.g. , Texas Rules of Professional Conduct Rule 1.04(a) ("A lawyer shall not ... charge, or collect an illegal fee or unconscionable fee. A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable .") (emphasis added); 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.") (emphasis added).

See , e.g. , Peter Lattman, Suit Offers a Peek at the Practice of Inflating a Legal Bill , N.Y. Times (March 25, 2013), https://dealbook.nytimes.com/2013/03/25/suit-offers-a-peek-at-the-practice-of-padding-a-legal-bill/ ("[C]hurning, while not endemic, is an insidious problem in the legal profession. In a survey of about 250 lawyers ... more than half acknowledged that the prospect of billing extra time influenced their decision to perform pointless assignments, such as doing excessive legal research or extraneous document review.").